**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re:  MONTE L. MASINGALE;
ROSANA D. MASINGALE,

        *Debtors*.

JOHN D. MUNDING, Chapter 7
Trustee,

        *Appellant*,

  v.

ROSANA D. MASINGALE; STATE
OF WASHINGTON,

        *Appellees*.

No. 22-60050

BAP No.
22-1016

OPINION

In re:  MONTE L. MASINGALE;
ROSANA D. MASINGALE,

        *Debtors*.

STATE OF WASHINGTON,

No. 22-60053

BAP No.
22-1016

*Appellant,*

v.

ROSANA D. MASINGALE;
GREGORY M. GARVIN, Acting U.S.
Trustee; JOHN D. MUNDING,
Chapter 7 Trustee,

*Appellees.*

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Faris, Lafferty III, and Brand, Bankruptcy Judges,
Presiding

Argued and Submitted February 5, 2024
Portland, Oregon

Filed July 26, 2024

Before:  Ronald M. Gould, Daniel A. Bress, and Lucy H.
Koh, Circuit Judges.

Opinion by Judge Bress

# SUMMARY[*]

## Bankruptcy

Reversing a decision of the Bankruptcy Appellate Panel and remanding, the panel held that, under the circumstances of this case, a Chapter 7 debtor could not exempt from the bankruptcy estate a homestead interest in her residence in an amount above the statutory limit.

The panel held that, in some circumstances, if a debtor attempts to exempt more than the statutory amount and no party in interest objects within thirty days of the creditors' meeting, the debtor retains an above-limit homestead exemption, even if the debtor has no colorable basis for claiming the exemption. In this case, the debtors filed a Chapter 11 bankruptcy petition and stated on a bankruptcy schedule that they were exempting "100% of FMV," or fair market value, in their homestead. No party in interest objected within the 30-day period. One of the debtors died, and the bankruptcy court later converted the case to Chapter 7.

Distinguishing *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), and *Schwab v. Reilly*, 560 U.S. 770 (2010), the panel held that, in the circumstances presented, the initial failure to object did not mean that the debtor could exempt more than the statutory limit. Because this case began as a Chapter 11 bankruptcy, in which the debtors owed fiduciary duties to their creditors, and in light of specific and conflicting representations that the debtors made within the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

30-day objection window, the debtors did not properly claim an above-limit exemption. Resultingly, no early objection to the homestead exemption was required. The panel held that the homestead exemption was limited to the statutory cap, and the remaining proceeds from the sale of the home were part of the bankruptcy estate.

**COUNSEL**

John D. Munding (argued), Munding PS, Spokane, Washington, for Appellant.

Darren M. Digiacinto (argued), Winston & Cashatt, Spokane, Washington; Dina L. Yunker (argued), Susan Edison, and Colleen M. Melody, Assistant Attorneys General; Robert W. Ferguson, Attorney General of Washington; Office of the Attorney General, Seattle, Washington; for Appellee.

Norma L. Hammes, Gold & Hammes, San Jose, California; for Amicus Curiae National Consumer Bankruptcy Rights Center.

Christina L. Henry, Seattle Consumer Justice PS, Seattle, Washington; for Amicus Curiae Northwest Consumer Law Center.

# OPINION

BRESS, Circuit Judge:

Debtors may exempt from the bankruptcy estate an interest in their residence, up to a statutory limit. But in some circumstances, if a debtor attempts to exempt more than the statutory amount and no party in interest objects within thirty days of the creditors' meeting, the debtor retains an above-limit exemption, even if the debtor had no colorable basis for claiming the exemption. *See Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992).

In this case, the debtors stated on a bankruptcy schedule that they were exempting "100% of FMV," or fair market value, in their homestead. No party in interest objected within the 30-day period. The question is whether the debtors successfully exempted an above-limit interest, so that the statutory cap for the homestead exemption no longer applies. We hold that in the circumstances presented, the initial failure to object does not mean the debtor can exempt more than the statutory limit. Because this case began as a Chapter 11 bankruptcy, in which the debtors owed fiduciary duties to their creditors, and in light of specific and conflicting representations that the debtors made within the 30-day objection window, the debtors did not properly claim an above-limit exemption. Resultingly, no early objection to the homestead exemption was required.

The debtors' homestead exemption is limited to the statutory cap; the remaining proceeds from the sale of the home are part of the bankruptcy estate. We reverse the decision of the Bankruptcy Appellate Panel.

I

A

"When a debtor files for bankruptcy, it 'creates an estate' that includes virtually all the debtor's assets." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2081 (2024) (quoting 11 U.S.C. § 541(a)). But to help debtors get back on their feet, the Bankruptcy Code permits them to exempt interests in specified property from the estate, with debtors having the option of choosing federal exemptions or exemptions created by state law. *See* 11 U.S.C. § 522(b). The Code sets a statutory cap on the value that may be exempted for certain types of assets. *Id.* § 522(d); *see also Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values.").

The debtor "shall file a list of property that the debtor claims as exempt" under § 522(b), and, "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). "The effect of an exemption is that the debtor's interest in the property is 'withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'" *In re Gebhart*, 621 F.3d 1206, 1210 (9th Cir. 2010) (quoting *Owen v. Owen*, 500 U.S. 305, 308 (1991)).

B

In 2015, Rosana and Monte Masingale filed for Chapter 11 bankruptcy in the Eastern District of Washington. The Masingales proposed a partial liquidation of their property but emphasized that in allowing them to continue managing their businesses, they expected that a Chapter 11 plan would provide more value to creditors than a Chapter 7 total

liquidation.  As part of the Chapter 11 Plan, the Masingales further proposed that they would retain their home in Greenacres, Washington.

The Masingales also claimed a federal "homestead" exemption in their Greenacres residence.  *See* 11 U.S.C. § 522(d)(1) (creating an exemption for "[t]he debtor's aggregate interest . . . in real property . . . that the debtor or a dependent of the debtor uses as a residence").  The value of that exemption is subject to a fixed cap of $15,000 that has been adjusted every three years since 1998 to reflect changes in the Consumer Price Index for All Urban Consumers.  *See id.* §§ 104(a), 522(d)(1).   In joint bankruptcy cases, as with a married couple, the value of the debtors' exemptions can be combined.  *Id.* § 522(m).  The parties agree that the maximum homestead exemption the Masingales could claim under federal law at the time their petition was filed was $45,950.

Schedule A of the Masingales' Chapter 11 petition listed their real property, including their home.  The Masingales claimed it was worth $165,430 and encumbered by a $130,724 mortgage:

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | Husband, Wife, Joint, or Community | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Debtor's Home 19716 E. 8th Avenue Greenacres, WA 99016 Legally described on Exhibit "4" attached | Fee simple subject to lien | | $165,430.00 | $130,724.00 |

Exemptions are listed on Schedule C of the bankruptcy petition, *see* Fed. R. Bankr. P. 4003(a), which on the applicable form required the debtor to provide a description of the property, the law justifying the exemption, the value of the claimed exemption, and the current property value. The Masingales' Schedule C listed their homestead exemption in this manner:

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Debtor's Home 19716 E. 8th Avenue Greenacres, WA 99016 Legally described on Exhibit "4" attached | 11 USC § 522(d)(1) | 100% of FMV | $165,430.00 |

"100% of FMV," as listed under "Value of Claimed Exemption," means "100% of Fair Market Value."

Under the Bankruptcy Rules, a party in interest (such as a trustee or creditor) has thirty days from the date of the creditors' meeting to object to the claimed homestead exemption. Fed. R. Bankr. P. 4003(b)(1). The Masingales' meeting of creditors was held on November 25, 2015. The State of Washington was a creditor in the bankruptcy.

On December 16, 2015, before the 30-day objection window closed, the Masingales filed two additional documents in the Chapter 11 proceeding that are relevant here. First, the Masingales filed a Disclosure Statement to "disclose that information deemed . . . material, important, and necessary to Creditors to arrive at a reasonably informed decision" in determining whether to accede to the Masingales' proposed Chapter 11 Plan. *See* 11 U.S.C. § 1125. Second, the Masingales filed a proposed Chapter 11 Plan. *See id.* § 1121; *see also Purdue Pharma*, 144 S. Ct. at 2081 ("Under Chapter 11, the debtor can work with its creditors to develop a reorganization plan governing the

distribution of the estate's assets; it must then present that plan to the bankruptcy court and win its approval."). In these documents, the Masingales made several representations that are important to our assessment of whether the debtors claimed an above-limit homestead exemption to which parties in interest had an obligation to object within thirty days of the creditors' meeting.

Article VII of the Disclosure Statement set forth "[a] list, with values of all Debtors' property claimed exempt," with the Masingales explaining in Article VIII that the list reflected their belief that "they [were] retaining only those exemptions allowed by law." The Masingales also stated that "to the extent Debtors are retaining property exceeding their exemptions, *only as described in Article VII* supra, Debtors are paying for the right," through the payment obligations detailed in the Plan. (Emphasis added). The Masingales' list of exemptions in Article VII, which set forth "[t]he property to be retained, its value as listed in the Schedules . . . and [the] amount by which the property exceeds the allowable exemptions, if any," indicated that, for the Greenacres home, the Masingales were not asserting an amount above the exemption. The Disclosure Statement included the following information about their homestead exemption (under item 2), listing the "Amount by which Exemption Exceeded" as "$ 0.00":

| Item | Amount by which Exemption Exceeded |
|---|---|
| 1. Cash and Deposits ($1,500.00). No liens. All exempt pursuant to 11 U.S.C. § 522(d)(5) leaves | $0.00 |
| 2. Debtors' Home. Value: $165,430.00. Less lien of Class 9 ($130,724) and 10% sales cost ($16,543) leaves $18,163. All exempt pursuant to 11 U.S.C. §522(d)(1) leaves | $0.00 |

For other items in their list of "Property to be Retained," the Masingales' Disclosure Statement did indicate their intent to exclude amounts exceeding the allowable exemptions.

In their Chapter 11 Plan, the Masingales represented that creditors would be paid before any above-limit exemptions were permitted. Per the Plan, the Masingales' "exemptions are not allowed, to the extent they exceed the statutory limit, until full payment is made pursuant to this Plan." If the Masingales did not "make the payments proposed" in the Plan, they would claim exemptions, but "the property which exceeds allowable exemptions would be available to Creditors." The Plan also said that because some of their exempted property "does exceed th[e] amount allowable," "Debtors shall pay an amount to Creditors, which is greater than the amount by which the claimed exemptions exceed those allowable by statute," through the payments outlined in the Plan. More generally, the Plan represented that "Debtors believe the payment and distribution under this Plan will benefit and pay all Creditors in full."

No party in interest objected to the Masingales' homestead exemption before the 30-day objection window closed. In August 2017, by which point Mr. Masingale had died, the bankruptcy court entered an order confirming the Chapter 11 Plan, with immaterial modifications. Because of Mr. Masingale's passing, all future references to "Masingale" in this opinion are to Mrs. Masingale.

C

In 2018, after Masingale failed to file required financial reports, the United States Trustee moved to convert the case to a Chapter 7 liquidation. In November 2018, over a year after the original plan confirmation, the bankruptcy court granted the Chapter 7 conversion. The court subsequently

appointed a Chapter 7 trustee, John Munding, to administer the case. Under the Bankruptcy Rules, no new objections to the Masingales' claimed exemptions could be filed upon conversion to Chapter 7 because the conversion had occurred over a year after the Plan had been confirmed. *See* Fed. R. Bankr. P. 1019(2)(B)(i). Thus, Munding was unable to object to the homestead exemption.

In 2021, Masingale moved to sell the homestead property and receive all the proceeds, with none of the money going to the bankruptcy estate. She claimed the property had appreciated in value and that she could sell it for over $400,000. The Trustee and the State of Washington objected to the sale, arguing that the home was property of the estate. Masingale withdrew the sale motion.

A month later, Masingale moved to compel the Trustee to abandon the property because, she claimed, her listing "100% of FMV" as the value of the exemption on her Schedule C made the property fully exempt, and no party in interest had objected within the 30-day period. The Trustee objected that Masingale's exemption was statutorily capped at $45,590 when her petition was filed, and that any post-petition appreciation inured to the benefit of the bankruptcy estate. The Trustee then filed a motion to sell the property.

The Bankruptcy Court for the Eastern District of Washington granted the Trustee's motion to sell and denied Masingale's motion to compel abandonment. The bankruptcy court found that Masingale was only entitled to the $45,950 statutory cap on her homestead exemption, with

the remaining value belonging to the bankruptcy estate.[1] The Trustee then sold the home for $422,000 (the home had significantly appreciated in value over the years). The bankruptcy estate currently holds $357,022.94, of which $223,033.34 was derived from the sale of the Greenacres property. We are told that, to date, Masingale has not paid her creditors much of anything and the Greenacres home is the main asset that could enable some amount of payment.

## D

With the Trustee ordered to hold the home's sale proceeds pending appeal, Masingale appealed to the Ninth Circuit's Bankruptcy Appellate Panel (BAP). In a published opinion, the BAP reversed the bankruptcy court and held that Masingale was entitled to all the sale proceeds on the home ($422,000), without regard for the statutory limit. *In re Masingale*, 644 B.R. 530 (B.A.P. 9th Cir. 2022).

The BAP treated the Supreme Court's decisions in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), and *Schwab v. Reilly*, 560 U.S. 770 (2010), as controlling. It reasoned that because the Masingales claimed "100% of FMV" exempt on their Schedule C, they successfully removed their home's entire fair market value from the bankruptcy estate, including post-petition appreciation, after no party in interest objected within the 30-day period. 644 B.R. at 538–44. In the BAP's view, "100% of FMV" was dispositive, as "parties must timely object to any improper exemption claim, no matter how frivolous." *Id.* at 534.

---

[1] The Trustee did not argue that Masingale's exemption should be limited to $34,706, the amount of equity Masingale had in the home. The bankruptcy court accordingly concluded that "the Trustee consents to an exemption of $45,950." Appellants do not challenge this finding on appeal.

Masingale was thus not limited to the amount of the statutory cap. The BAP reached this conclusion notwithstanding what it described as "the confusing and contradictory nature of the plan." *Id.* at 543 n.7.

Though it ruled for Masingale, the BAP expressed concern with debtors "[i]mproperly claiming exemptions" above the statutory cap. *Id.* at 544. According to the BAP, "[w]e do not condone the conduct of the Masingales and their counsel, and we do not mean to immunize them from all consequences for making a baseless claim of exemption," suggesting the possibility of sanctions. *Id.* The BAP further noted that "[h]ad a party in interest timely objected to the Masingales' homestead exemption that blatantly exceeded the statutory limits, the bankruptcy court probably would and should have sustained that objection." *Id.* at 541 n.6.

The Trustee and State timely appealed. We have jurisdiction under 28 U.S.C. § 158(d). We review the BAP's decision de novo. *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018); *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000).

II

The question we must decide is whether the failure of any party in interest to object to the Masingales' claimed homestead exemption within thirty days of the creditors' meeting means that the debtor can now exempt more than the statutory limit. If no such objection was then required to preserve the estate's ability to retain above-cap value in the home, those amounts that exceed the homestead exemption's statutory limit are instead part of the bankruptcy estate.

This issue implicates two Supreme Court cases, *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), and *Schwab v.*

*Reilly*, 560 U.S. 770 (2010). For the reasons we explain, the BAP read too much into these decisions. In our view, the Masingales did not properly claim an exemption above the statutory limit. As a result, no early objection to the claimed homestead exemption was required to preserve the estate's ability to retain above-limit value in the home.

A

We begin with an overview of *Taylor* and *Schwab*.

*Taylor* concerned a debtor, Emily Davis, who was pursuing an employment discrimination claim in state court against Trans World Airlines (TWA). 503 U.S. at 640. While her discrimination claim was on appeal, Davis filed a Chapter 7 bankruptcy petition. *Id.* Her bankruptcy schedule claimed an exemption for the damages she expected to win in her employment discrimination case. *Id.* The bankruptcy schedule listed the value of the claimed exemption as "unknown." *Id.* When the creditors' meeting was held, the bankruptcy trustee, Robert Taylor, was informed that Davis might win $90,000 in the suit. *Id.* He was later told that Davis's counsel was optimistic that a $110,000 settlement could be secured. *Id.*

Believing that Davis's discrimination lawsuit would not yield a payout, the trustee did not object to Davis's claimed exemption. *Id.* at 641. But Davis won her appeal and TWA settled with her for $110,000. *Id.* Once the trustee learned of the settlement, he filed a complaint in the bankruptcy court and claimed that the settlement proceeds were property of the estate. *Id.* The parties "agree[d] that Davis did not have a right to exempt more than a small portion of these proceeds," even though she had "claimed the full amount as exempt." *Id.* at 642. The Supreme Court was thus faced with the issue of "whether the trustee may contest the

validity of an exemption after the 30-day period if the debtor had no colorable basis for claiming the exemption." *Id.* at 639.

*Taylor* held that the trustee's failure to object to the claimed exemption within the 30-day timeframe prevented the trustee from challenging the validity of the exemption. *Id.* at 642. Because Davis had claimed the lawsuit proceeds as exempt on her schedule, § 522(*l*) "made the property exempt" once the 30-day window had passed without an objection. *Id.* at 643. As a result, the trustee could not later "contest the exemption[,] . . . whether or not Davis had a colorable statutory basis for claiming it." *Id.* at 643–44.

*Taylor* recognized that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.* at 644. If the trustee "did not know the value of the potential proceeds of the lawsuit," he could have sought a hearing or asked the bankruptcy court for an extension of the objection period. *Id.* But having failed to do either, the trustee could not deprive the debtor of the exemption. *Id.* Thus, under *Taylor*, "[i]f an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." *Schwab*, 560 U.S. at 775–76 (citing *Taylor*, 503 U.S. at 642–43). The Court in *Taylor* acknowledged that this could lead debtors to claim improper exemptions but reasoned that existing protections against fraudulent claims provided some safeguards against this. *Taylor*, 503 U.S. at 644. And, "[t]o the extent that they do not, Congress may enact" further rules to prevent it. *Id.*

Eighteen years later, in *Schwab*, the Supreme Court held that a debtor could not claim an exemption above the

statutory limits, even though no objection was made within the 30-day period. The debtor, Nadejda Reilly, filed for Chapter 7 bankruptcy after her catering business failed. *Id.* at 774. On her bankruptcy schedules, Reilly listed cooking and kitchen equipment, to which she assigned an "estimated market value" of $10,718. *Id.* at 775. Reilly claimed two exempt interests in this equipment: a "tools of the trade" exemption of $1,850, 11 U.S.C. § 522(d)(6), and a federal miscellaneous "wildcard" exemption of $8,868, *id.* § 522(d)(5). *Schwab*, 560 U.S. at 775. Combined, these two exemptions equaled the total "market value" Reilly listed for the equipment: $10,718. *Id.* No creditor objected to these claimed exemptions because the dollar value that Reilly assigned to each exemption fell within the monetary limits that the Code provided. *Id.* at 776.

An appraisal later valued the equipment at approximately $17,200. *Id.* The bankruptcy trustee, William Schwab, then moved to auction the equipment, award Reilly the $10,718 she claimed as exempt, and distribute the equipment's remaining surplus value to the creditors. *Id.* Opposing the motion, Reilly argued that "by equating on Schedule C the total value of the exemptions she claimed in the equipment with the equipment's estimated market value," Reilly "had put Schwab and her creditors on notice that she intended to exempt the equipment's full value, even if that amount turned out to be more than the dollar amount she declared, and more than the Code allowed." *Id.* Relying on *Taylor*, Reilly asserted that the trustee's failure timely to object to her claimed exemption meant that she could receive the excess value from the equipment's sale. *Id.*

The Supreme Court considered whether the trustee was required to object when the debtor in her schedule of exempt

property declared the value of the assets "to be an amount within the limits that the Code prescribes." *Id.* at 774. The Court held that the trustee in these circumstances was not required to object within the 30-day window. *Id.* at 794–95. As the Bankruptcy Code typically allows a debtor to exempt only a monetary interest "in the assets described in the category, *not* as the assets themselves," *id.* at 782 (citing 11 U.S.C. § 522(d)), the trustee was not required to object to property claimed as exempt when the stated value of the interest "was within the limits the Code allows." *Id.*

The Court distinguished *Taylor* based on the facial validity of the debtor's exemption in *Schwab*. "Critically . . . the debtor in *Taylor* did *not*, like the debtor here, state the value of the claimed exemption as a specific dollar amount at or below the limits the Code allows." *Id.* at 788. Instead, "[t]he interested parties in *Taylor* agreed that this entry rendered the debtor's claimed exemption objectionable on its face." *Id.* at 789. *Taylor* thus "concerned a trustee's obligation to object to the debtor's entry of a 'value claimed exempt' that was *not* plainly within the limits the Code allows." *Id.* But in *Schwab*, "the opposite is true. The amounts . . . *are* facially within the limits the Code prescribes and raise no warning flags that warranted an objection." *Id.* Because of this distinction, *Schwab* allowed the trustee to retain the excess sale proceeds for distribution to creditors, even though no party in interest had lodged an objection within the 30-day window. *Id.* at 789–91.

Reilly responded that such an approach "creates perverse incentives for trustees and creditors to sleep on their rights." *Id.* at 792. In a passage that is important for Masingale's use

of the "100% of FMV" notation, the Supreme Court offered
the following guidance:

> Where, as here, it is important to the debtor
> to exempt the full market value of the asset or
> the asset itself, our decision will encourage
> the debtor to declare the value of her claimed
> exemption in a manner that makes the scope
> of the exemption clear, for example, by
> listing the exempt value as "full fair market
> value (FMV)" or "100% of FMV." Such a
> declaration will encourage the trustee to
> object promptly to the exemption if he wishes
> to challenge it and preserve for the estate any
> value in the asset beyond relevant statutory
> limits. If the trustee fails to object, or if the
> trustee objects and the objection is overruled,
> the debtor will be entitled to exclude the full
> value of the asset. If the trustee objects and
> the objection is sustained, the debtor will be
> required either to forfeit the portion of the
> exemption that exceeds the statutory
> allowance, or to revise other exemptions or
> arrangements with her creditors to permit the
> exemption. See Fed. Rule Bkrtcy. Proc.
> 1009(a). Either result will facilitate the
> expeditious and final disposition of assets,
> and thus enable the debtor (and the debtor's
> creditors) to achieve a fresh start free of the
> finality and clouded-title concerns Reilly
> describes.

*Id.* at 792–94 (footnotes omitted).

In 2015, changes were made to the Schedule C form, now numbered Official Form 106C and entitled "Schedule C: The Property You Claim as Exempt." *See* U.S. Admin. Off. of the Cts., Bankr. Forms: Official Form 106C (April 2022). Under a column labeled "Amount of the exemption you claim," debtors are instructed to check only one of two boxes:

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $_____ | ☐ $_____<br>☐ 100% of fair market value, up to any applicable statutory limit | |

If debtors do choose "100% of fair market value" on Official Form 106C, that amount is limited to any applicable statutory cap—seemingly reducing the incidence of facially invalid exemptions and any corresponding need to object.

The Advisory Committee Notes to Official Form 106C explained the relevant revisions to the form as follows:

> The form has also been changed in light of the Supreme Court's ruling in *Schwab v. Reilly,* 560 U.S. 770 (2010). Entries in the "amount of the exemption you claim" column may now be listed as either a dollar limited amount or as 100% of fair market value, up to any applicable statutory limit. For example, a debtor might claim 100% of fair market value for a home covered by an exemption capped at $15,000, and that limit would be applicable. This choice would impose no dollar limit where the exemption is unlimited in dollar amount, such as some

> exemptions for health aids, certain
> governmental benefits, and tax-exempt
> retirement funds.

U.S. Admin. Off. of the Cts., Advisory Comm. on Rules of
Bankr. Proc., Official Form 106C (Committee Note) at 4
(April 2022).  Official Form 106C was not in place when the
Masingales filed for bankruptcy, so we must consider the
implications of a debtor claiming a "100% of FMV"
exemption on a Schedule C without checking a box that
limits the value to the applicable statutory limit.

### B

We now turn back to the facts of our case and consider
whether the lack of objection to the Masingales' claimed
homestead exemption within the 30-day period means that
Masingale is entitled to sale proceeds exceeding the statutory
cap.

### 1

The BAP concluded that the debtor was not limited to
the statutory cap because the Masingales listed "100% of
FMV" for the homestead on their Schedule C.  Relying on
the same passage from the end of *Schwab* that we set forth
in block-quote above, the BAP reasoned that by using
"100% of FMV," "[t]he Masingales followed the Supreme
Court's suggestion to the letter."  *In re Masingale*, 644 B.R.
at 540.  The BAP thus treated the "100% of FMV" notation
as dispositive of whether the Masingales claimed an above-
limit exemption sufficient to require an objection under
*Taylor*.  The BAP reasoned that because "100% of FMV" "is
not a dollar value" and "can only refer to the value of the
entire asset," it is just as facially invalid as the "unknown"
value listed in the *Taylor* schedule.  *Id.* at 541.  The BAP

thus believed this notation required an objection within the 30-day window, just as the notation in *Taylor* did.

The State protests that the Supreme Court's discussion of "100% of FMV" at the conclusion of *Schwab* was dicta. But we agree with the BAP that this portion of *Schwab* cannot be so easily dismissed. The Supreme Court there provided explicit direction that debtors who want to "exempt the full market value of the asset" may be able to do so by "listing the exempt value as 'full fair market value (FMV)' or '100% of FMV.'" *Schwab*, 560 U.S. at 792–93. We do not discount this clear guidance from the Supreme Court. It seems more than apparent that, in a given case, a "100% of FMV" notation, without more, could be sufficient to require an early objection to a claimed exemption.

But we need not consider the full import of a stand-alone "100% of FMV" notation on a Schedule C, and we do not do so in this case. We will assume that if all we had here was the debtors' schedules, the failure to object within thirty days of the creditors' meeting would have meant that Masingale was not limited to the homestead exemption's statutory dollar limit. Where we part ways with the BAP is on whether the Masingales' "100% of FMV" notation was sufficient to require an objection in this particular case.

## 2

This case is different from both *Taylor* and *Schwab* in that it began as a Chapter 11 proceeding (and produced a confirmed Chapter 11 plan) before later being converted to a Chapter 7 liquidation after Masingale failed to meet her Chapter 11 obligations. This case is also different than *Taylor* and *Schwab* because during the Chapter 11 proceedings—and with the goal of getting a Chapter 11 plan confirmed—the Masingales made critical representations

within the 30-day objection period.  As we now explain, the initial Chapter 11 posture and the Masingales' Chapter 11-related representations affect whether the "100% of FMV" notation on their Schedule C created the type of "clear" above-limit exemption or "warning flag[]" that required a make-it-or-lose-it objection within thirty days of the creditors' meeting.  *Schwab*, 560 U.S. at 789.

Most importantly, after submitting their Schedule C, the Masingales made several representations to their creditors within the objection period indicating that they were not claiming an above-limit homestead exemption, or that they would not be entitled to such an exemption until the creditors were paid in full.  Article VII of the Masingales' Disclosure Statement specifically represented for the homestead that the "amount by which the property exceeds the allowable exemption[]" was "$0.00."   In the section immediately following this representation, the Disclosure Statement says that the "Debtors believe they are retaining only those exemptions allowed by law," and that property retained in excess of their exemptions is "only as described in Article VII."  And, unlike the Greenacres residence, for other items in their Article VII list of "Property to be Retained" the Masingales did indicate amounts by which the property exceeded the allowable exemptions.

The Masingales' proposed Chapter 11 Plan, meanwhile, represented that creditors would be paid before any exemptions above the statutory limit were permitted.  The Plan stated that "Debtors' exemptions are not allowed, to the extent they exceed the statutory limit, until full payment is made pursuant to this Plan," and that if the Masingales did not follow through, "the property which exceeds allowable exemptions would be available to Creditors."  The Plan also said that because some of their property claimed as exempt

did "exceed that amount allowable," "Debtors shall pay an amount to Creditors, which is greater than the amount by which the claimed exemptions exceed those allowable by statute," through the payments outlined in the Plan. As the BAP explained, the Plan "acknowledged that the property would not be exempt until all creditors were paid in full." 644 B.R. at 534.

These representations were not mere legalese. They were included in the Chapter 11 documents to convince the Masingales' creditors to proceed with the Plan and so that the Masingales could, in their words, "prevent the forced sale and liquidation of [their] property" and avoid a tax liability that would be created by liquidation. These representations were made to the Masingales' creditors before the objection window on exemptions closed. And the representations were made in the context of Chapter 11 proceedings, in which the Masingales were serving as debtors-in-possession and owed attendant fiduciary obligations to their creditors. *See In re Perez*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994) (explaining that a Chapter 11 debtor in possession has "a fiduciary relationship to the estate's creditors"); *Wolf v. Weinstein*, 372 U.S. 633, 649 (1963) ("[S]o long as the Debtor remains in possession, it is clear that the [debtor] bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession."); *see also* 11 U.S.C. § 1107(a).

Under these circumstances, we do not think it correct to apply *Taylor*'s rule of decision. Even if "100% of FMV" on a Schedule C can be sufficient standing alone to demonstrate a debtor's intention to exempt the full market value of the asset, here the Masingales said more than this. Within the 30-day period, they also represented in Chapter 11 papers that, for the homestead, the "amount by which the property

exceeds the allowable exemption[]" was "$0.00," and that creditors would be fully paid before above-limit exemptions were allowed.

The idea expressed at the end of *Schwab* was that a notation like "100% of FMV" would make the "scope of the exemption clear." *Schwab*, 560 U.S. at 792. Given the Masingales' representations on their Disclosure Statement and Chapter 11 Plan—representations that were heightened in significance by the Masingales' fiduciary duties as debtors-in-possession—"100% of FMV" on this Schedule C does not have nearly the clarity the Supreme Court was suggesting it could. *See* 4 Collier Bankr. Practice Guide § 74.09 (2024) (explaining that the 30-day deadline "may not apply if the debtor fails to make clear an intent to exempt the debtor's full interest in property"). The "100% of FMV" notation here thus does not carry the same "warning flag" connotation that it otherwise might in a case lacking these features. *See Schwab*, 560 U.S. at 789; *Masingale*, 644 B.R. at 543 n.7 (describing "the confusing and contradictory nature of the [Masingales'] plan").

Masingale argues that notwithstanding the originating Chapter 11 context of this case, Supreme Court precedent requires that we focus only on the Schedule C to the exclusion of all other representations the Masingales made within the relevant time period. In particular, Masingale relies on *Schwab*'s statement that the trustee there "was entitled to evaluate the propriety of the claimed exemptions based on three, and only three, entries" on a Schedule C. 560 U.S. at 785.

This misunderstands *Schwab*. *Schwab* made this statement in the context of a facially *valid* Schedule C, holding that the trustee was not required to rummage through

other documents to determine if the debtor had a different intent to claim an exemption greater than the within-limit amounts listed on the schedule. *Id.* at 779 (rejecting this "complicated view of the trustee's statutory obligation"). Here, Masingale claims that the exemption was facially *in*valid under *Taylor*, which, if true, could require a prompt objection. That parties in interest are "entitled to rely upon" a facially *valid* Schedule C, *see Schwab*, 560 U.S. at 794, does not mean they are required to act upon a potentially invalid one regardless of whatever else the debtor may say about the exemption within the 30-day period. *Schwab* did not address that issue.

*Schwab*, moreover, did not originate in Chapter 11, and we have found no case involving this question that did. We can assume that the Masingales' homestead exemption on Schedule C was facially invalid standing alone. But at least in the context of a case that begins in Chapter 11, when debtors make later contradictory statements within the 30-day period—including that they will pay their creditors in full before taking any above-limit exemptions—those later statements can inform whether the debtor sufficiently claimed an objection-warranting exemption. Here again, *Schwab* does not dictate otherwise.

*Taylor* provides further support for looking outside the Schedule C in this case. *Taylor* noted that the debtor and her counsel there had informed the trustee that the "unknown" value of the debtor's pending lawsuit might bear fruit, but that the trustee did not believe them. 503 U.S. at 640–41. The Court faulted the trustee for failing to rely on that information, which was information outside of the bankruptcy schedule on which the exemption was claimed. *Id.* at 644 ("In this case, despite what respondents repeatedly told him, Taylor did not object to the claimed exemption.").

*Taylor* is thus consistent with the notion that when it comes to facially invalid exemptions on a bankruptcy schedule, courts may consider other representations made within the 30-day period in considering whether "100% of FMV" reflects a *Taylor*-style exemption and, relatedly, the need for a party in interest to object.

Masingale further argues that even with the potentially contradictory representations in the Chapter 11 documents and the Chapter 11 genesis of this case, the better rule is still that whenever a debtor says "100% of FMV" on a bankruptcy schedule, an objection within the 30-day period is required, no matter what. The Masingales' objection-forcing rule is not without some merit. Given the Supreme Court's guidance in *Schwab* about the use of "100% of FMV" when a debtor wants to exempt the full market value of an asset, *see Schwab*, 560 U.S. at 792–93, parties in interest take a considerable risk when they do not levy an early objection to a "100% of FMV" exemption on a schedule, when that notation is unaccompanied by any other information.

At the same time, at least in the context of a bankruptcy proceeding that originated in Chapter 11, in which debtors owe fiduciary duties to their creditors, precedent does not suggest that we should endorse what happened here: debtors saying one thing about the homestead exemption on their Schedule C, saying something contradictory in their Disclosure Statement and proposed Chapter 11 Plan, and then capitalizing on the lack of any objection within the 30-day period. Masingale has no explanation for the statements in the debtors' Disclosure Statement and Chapter 11 Plan except to say that we should ignore them.

Indeed, at oral argument, Masingale all but confirmed her position that, after noting "100% of FMV" on her Schedule C—and regardless of what other contrary representations she might later make within the 30-day period—if creditors did not object to the exemption they were out of luck. Even though *Taylor* allows debtors to secure above-limit exemptions that lack any colorable basis, 503 U.S. at 643–44, it does not justify the far greater inequity of Masingale's proposed rule. Though *Taylor* will control in many situations, *Schwab* itself did not enforce *Taylor*'s objection deadline. Neither *Taylor* nor *Schwab* require the extreme result that Masingale seeks.

Masingale's proposed rule is not costless, either, as it would require objections anytime "100% of FMV" is used. A rule that incentivizes protective objections en masse can reduce the efficiency of the bankruptcy process. *See In re Biondo*, 59 F.4th 811, 814–16 (6th Cir. 2023) ("[P]rophylactic objections can slow down bankruptcies and waste judicial resources."). Indeed, it is such a regime—in which debtors use "100% of FMV" to claim an invalid exemption, only to be met with a valid objection—that new Official Form 106C is seemingly trying to avoid by directing debtors to choose "100% of fair market value, *up to any applicable statutory limit*." U.S. Admin. Off. of the Cts., Bankr. Forms: Official Form 106C (April 2022) (emphasis added); *see also* Peter Spero, Fraudulent Transfers, Prebankruptcy Planning and Exemptions § 12:35 (September 2023) (noting that "[n]ew Bankruptcy Form

Schedule C may have eliminated much of the controversy"
post-*Schwab*).**[2]**

\*          \*          \*

The debtors did not properly claim an above-limit
homestead exemption that required an objection within the
30-day period.  Masingale's homestead exemption is thus
limited to the amount of the statutory cap.  The remaining
proceeds of the sale of the Greenacres residence are property
of the estate.  The decision of the BAP is reversed, and this
matter is remanded for proceedings consistent with this
opinion.

**REVERSED AND REMANDED.**

---

[2] After concluding that Masingale was not limited to the federal cap for
homestead exemptions, the BAP further held that Masingale was entitled
to the fair market value of the home at the time it was sold, not its fair
market value at the time the bankruptcy petition was filed.  The State and
Trustee argue that even if the statutory cap does not apply, under the
"snapshot rule" Masingale was only entitled to the fair market value of
the homestead as of the date of the petition, with any post-petition
appreciation inuring to the estate.  We do not reach this issue of post-
petition appreciation in light of our conclusion that Masingale may
receive only the statutorily capped amount.