**In re DYNAMIC BROKERS, INC., Debtor.**

**Raul Varela; Inter Mountain Mortgage, Appellants,**

**v.**

**Dynamic Brokers, Inc.; United States Trustee; Foothill Independent Bank, Appellees.**

**BAP No. CC–02–1376–PKMa.**

**Bankruptcy No. LA 00–30879–ES.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 23, 2003.

Filed May 19, 2003.

Robert M. Ruben, Law Offices of Steven J. Melmet, Inc., Santa Ana, CA, for Raul Varela and Inter Mountain Mortgage.

Louis J. Esbin, Law Office of Louis J. Esbin, Valencia, CA, for Dynamic Brokers, Inc.

Before PERRIS, KLEIN and MARLAR, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The key question in this appeal from the disallowance of a claim and the confirmation of a chapter 11 plan of reorganization is whether a chapter 11 plan confirmation proceeding can be used to reduce a creditor's claim without compliance with claim objection procedures. We conclude that the comprehensive chapter 11 statutory scheme defines the minimum due process for dealing with creditors, requires compliance with the claim objection procedures, and precludes using a chapter 11 plan provision as the means to reduce a claim that is "deemed allowed" without the creditor's consent. Accordingly, we REVERSE both orders on appeal and REMAND.

## FACTS

Debtor Dynamic Brokers, Inc., filed a chapter 11 case in July 2000, scheduling appellant Raul Varela as a secured creditor with a $170,000 claim, secured by a second deed of trust on real property valued at $1,900,000. Debtor did not designate the Varela claim as contingent, unliquidated, or disputed, with the consequence that it was "deemed allowed" ("Varela 'deemed allowed' claim").

Neither Varela nor his loan servicer, appellant Inter Mountain Mortgage (which has not filed a brief in this appeal), filed a proof of claim by the December 15, 2000, deadline that the court fixed under Rule 3003(c)(3).

In its first two versions of its plan of reorganization filed in February and May 2001, debtor proposed to pay the full $170,000 on Varela's "deemed allowed" claim. However, beginning with the second amended plan, filed November 5, 2001, debtor changed course and designated Varela's claim as $95,275 in principal, plus $23,125.19 in interest.

Debtor did not amend its schedules to reflect any change in the status or amount of Varela's $170,000 scheduled claim. The plan does not explain the change, but does state that the proposed interest rate and amortization period are a "modification of the contractual agreement between the Debtor and each of the class claimants, based upon an adjustment from the usurious rate of interest charged, no claims being filed, and Debtor's documentation." Fourth Amended Plan of Reorganization at 6.

The court held hearings on confirmation of the fourth amended plan in six sessions stretching from March 5, 2002 to July 2, 2002, during which the court was concerned primarily with issues of feasibility and cram down.

In the middle of the confirmation process, on April 8, 2002, Inter Mountain filed a proof of claim on behalf of Varela for $218,384.30, based on a principal amount of $170,000 plus interest and other costs ("Varela filed claim").

Debtor objected to the Varela filed claim as not timely filed but did not object to the Varela "deemed allowed" claim.

Although the Internal Revenue Service objected to confirmation from the outset, Inter Mountain did not take a position until the fourth session of the confirmation hearing, on May 23, 2002, when its counsel orally objected to confirmation on the basis that the plan reduced the Varela claim's principal from the $170,000 stated in both

the schedules and the proof of claim. In other words, although both the Varela filed claim and the Varela "deemed allowed" claim were implicated, the essence of the confirmation objection was that the plan did not propose to pay the Varela "deemed allowed" claim the amount the Bankruptcy Code requires.

The court declined to entertain the oral objection to confirmation, because it was not in writing and because the issue presented could be considered in the claim objection process.

The fifth session of the confirmation hearing, held on June 13, also included argument on debtor's objection to the Varela filed claim. Inter Mountain's counsel explained that it had not filed a timely proof of claim for Varela by the December 15, 2000, court-imposed deadline because there was never any dispute about the amount of the claim until after the claims bar date had passed. He argued that it was not permissible for debtor to use the plan as a method for disputing and reducing the amount of the claim. Debtor contended that it was entitled to use the plan to reduce the principal amount of the Varela "deemed allowed" claim from $170,000 to $95,275, because debtor believed that the interest rate on the loan was usurious.

At the July 2 hearing, the court confirmed the fourth amended plan and sustained the objection to the Varela filed claim, reasoning that Varela should have objected to confirmation of the plan if he wanted to preserve the full amount of his claim.

The court entered orders confirming the plan and sustaining the objection to the Varela filed claim. Varela timely appealed.

## ISSUES

1. Whether the appeal is moot.

2. Whether a chapter 11 plan provision can be used to object to a claim and to circumvent the claims objection procedure prescribed by the Federal Rules of Bankruptcy Procedure.

3. Whether the fourth amended plan of reorganization satisfied the confirmation requirements of the "best interest" test and of fair and equitable treatment, without unfair discrimination, as to nonconsenting classes.

## STANDARD OF REVIEW

The issues relating to the disallowance of Varela's claim are questions of law, which we review de novo. *Weeks v. Pederson (In re Pederson)*, 230 B.R. 158, 159 (9th Cir. BAP 1999). Whether a chapter 11 plan satisfies the "best interest" test for confirmation and whether it unfairly discriminates against, or is fair and equitable to, nonconsenting impaired classes of claims are issues of fact, which we review for clear error. *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 653 (9th Cir. BAP 1994), *aff'd*, 85 F.3d 1415 (9th Cir.1996).

## DISCUSSION

We examine the assertion that the appeal is moot before turning to the main questions regarding chapter 11 claim objection procedure and plan confirmation.

### I

Debtor argues that this appeal should be dismissed as moot because the confirmed plan has been substantially consummated without Varela having obtained a stay pending appeal of the confirmation order.

An appeal is moot if events have occurred after the entry of the order being

appealed that prevent an appellate court from granting effective relief. *First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 289 (9th Cir. BAP 1998). An appeal from an order confirming a chapter 11 plan is not moot despite substantial consummation[1] if, under the facts of the case, there has not been such a comprehensive change of circumstances as to render it impractical to grant effective relief. *Id.* The appeal is not moot where relief can be fashioned merely by ordering additional disbursements of money by one of the parties. *Id.*

Here, debtor contends that the appeal is moot because some payments have been made under the plan, including payments to Varela. In addition, it asserts that third parties are now relying on the confirmed plan, including debtor's creditors and the creditors of debtor's principal, who has filed his own chapter 13 case. The primary secured creditor has sold its claim to a third party, which is relying on the stream of payments under the plan. Debtor has assumed its franchise agreement with Century 21, is making royalty payments and has hired additional real estate agents. The Internal Revenue Service is relying on the plan for its analysis of debtor's principal's liability in his chapter 13 plan.

Even assuming that debtor's plan is substantially consummated, debtor has not demonstrated that we cannot provide effective relief if the confirmation order were to be reversed. Varela seeks payment in full of his secured claim, rather than payment of a vastly reduced principal amount. Debtor does not argue that allowing Varela's claim, with the accompanying consequences for the plan, would reduce the payments to other creditors enough so that the distribution could not be adjusted over time to accommodate Varela's claim. Nor does debtor assert that the plan would be infeasible if it were required to pay Varela.

The plan was confirmed in July 2002, and payments to secured creditors are to continue for 20 years. Thus, only a small portion of the plan's payments have been made, and future payments could be adjusted if Varela's claim must be paid in full. *See Oxford Life Ins. Co. v. Tucson Self–Storage, Inc. (In re Tucson Self–Storage, Inc.)*, 166 B.R. 892 (9th Cir. BAP 1994) (appeal of confirmation order not moot where future payments could be adjusted to provide amount determined on appeal). There is no assertion that the assumption of the Century 21 franchise agreement or the hiring of additional real estate agents would be affected by any relief we could provide.

As in *Baker & Drake, Inc. v. Pub. Serv. Comm'n (In re Baker & Drake, Inc.)*, 35 F.3d 1348 (9th Cir.1994), this is not a complex reorganization where it would be impossible to "unscramble the eggs." *Id.* at 1351. Although payments have been made to third parties who are not parties to this appeal, there is nothing in debtor's submissions that shows that those parties' rights would be unreasonably adversely affected if Varela is successful on this appeal. Therefore, the appeal is not moot.

## II

The bankruptcy court disallowed Varela's claim as untimely because the proof of

---

1. "Substantial consummation" means
 (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
 (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
 (C) commencement of distribution under the plan.
11 U.S.C. § 1101(2).

claim was filed nearly 16 months after the court-imposed December 15, 2000 "claims bar date," [2] and then confirmed the chapter 11 plan based on debtor's version of the correct amount of the claim. Our determination of the viability of that action requires us to focus on the precise status of the Varela claim and the statutory and procedural provisions governing challenges to claims in chapter 11 cases.

## A

From the standpoint of the chapter 11 claims process, the Varela claim made its initial formal appearance in the case as the Varela "deemed allowed" claim when debtor scheduled the debt to Varela at $170,000 without designating it as disputed, contingent or unliquidated. As a matter of law, the consequence of scheduling a claim in a chapter 11 case without designating it as disputed, contingent or unliquidated is that a proof of claim is "deemed filed under section 501." 11 U.S.C. § 1111(a).[3]

Under § 1111(a), which provision is unique to chapter 11 cases, the Varela claim was "deemed filed" when debtor filed schedules listing the $170,000 debt to Varela without designating it as disputed, contingent or unliquidated. That "deemed filed" status is made explicit by Rule 3003, which implements § 1111(a), by providing that in chapter 11 cases "it shall not be necessary for a creditor" to file a proof of claim unless the claim is either not scheduled or is scheduled as disputed, contingent or unliquidated. *Compare* Fed. R. Bankr.P. 3003(b)(1),[4] *with* Fed. R. Bankr.P. 3003(c)(2).[5]

Moreover, Rule 3003(b)(1) provides that the schedules listing the Varela claim at $170,000 without designating it as disputed, contingent or unliquidated also constitute "prima facie evidence of the validity and amount of the claim." Rule 3001(b)(1).

The next pertinent statutory provision in the claims structure is § 502(a), which provides that a claim that is "filed under section 501" is automatically "deemed allowed, unless a party in interest ... objects."

2. Rule 3003(c)(3) provides:
 The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3003(c)(2), (c)(3), and (c)(4).
 Fed. R. Bankr.P. 3003(c).

3. Section 1111(a) provides:
 A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.
 11 U.S.C. § 1111(a).

4. Rule 3003(b)(1) provides:
 (1) *Schedule of Liabilities*. The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.
 Fed. R. Bankr.P. 3003(b)(1).

5. Rule 3003(c)(2) provides:
 (2) *Who Must File.* Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.
 Fed. R. Bankr.P. 3003(c)(2).

■ Section 1111(a) dovetails with § 502(a) by providing that a scheduled, undisputed, noncontingent, liquidated claim is "deemed filed under section 501." This phrase is a statutory term of art that triggers the § 502(a) "deemed allowed" provision. Thus, the effect of § 1111(a) is that scheduled, undisputed, noncontingent, liquidated claims are both "deemed filed" and "deemed allowed."

It follows that, as with other claims that are eligible to be "deemed allowed," § 502(a) requires that a party in interest "object" to a scheduled § 1111(a) "deemed allowed" claim in a chapter 11 case in the manner prescribed by the Rules in order to preclude allowance.

■ Rule 3007 implements the statutory command that claims be "deemed allowed" unless a party in interest "objects," by requiring that an objection to claim be in writing and filed and by requiring notice to the creditor of the objection to claim at least 30 days before the hearing on the objection. Fed. R. Bankr.P. 3007; 9 ALAN RESNICK & HENRY SOMMER, COLLIER ON BANKRUPTCY ¶ 3007.01 (15th ed. Rev.2002). The filing of a formal objection to a claim trumps the "deemed allowed" status and necessitates formal allowance of the claim. 4 COLLIER at ¶ 502.02[3][a].

Significantly, there is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007. Nor would it make sense to do so in light of the fact that a plan confirmation is a collective proceeding while a claim objection is typically a two-party dispute. Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection

that the two proceedings simply do not form a convenient trial unit.

The rules do, however, accommodate the possibility that claims objections and plan confirmation proceedings may be on parallel tracks and different timetables. They coordinate the two with a provision that makes clear that claim objections need not be resolved before a chapter 11 plan is confirmed. Specifically, the holder of a claim that is subject to an unresolved objection is still permitted to vote to accept or reject a chapter 11 plan by way of a temporary allowance in an amount that the court, after notice and hearing, "deems proper." Fed. R. Bankr.P. 3018(a); *Bell Rd. Inv. Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. BAP 1989); *Swift v. Bellucci (In re Bellucci)*, 119 B.R. 763, 778 (Bankr. E.D.Cal.1990); 9 COLLIER at ¶ 3018.01[5].

The conclusion that an objection under Rule 3007 is required in order to change the amount of a claim, over a creditor's objection in a chapter 11 case, is further supported by an examination of the list of matters that Congress authorized to be included in chapter 11 plans. *See* 11 U.S.C. § 1123(b). The only reference in that statute to adjustments of claims is the authorization for a plan to provide for "the settlement or adjustment of any claim or interest *belonging to* the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A) (emphasis supplied). It is significant that there is no parallel authorization regarding claims *against* the estate.

Likewise, we reject debtor's contention, made on the face of the plan, that reducing the amount of the Varela "deemed allowed" claim based on debtor's mere assertion of usury constituted a "modification" encompassed by the authority for a plan to "modify the rights of holders of secured claims[.]" 11 U.S.C. § 1123(b)(5). The proposition that a plan could be used

to reduce a secured claim but not an unsecured claim, for which there is no parallel provision, makes no sense. We decline to read the Bankruptcy Code in a way that makes one of its provisions nonsensical.

Moreover, utilizing a plan confirmation proceeding as a method of objecting to a claim presents troubling policy issues in the face of rules of procedure that appear to require formal objections to claims. The construct of the statute and rules that is held out to the public is that claims are deemed allowed unless there is an objection in accordance with rules that prescribe a precise procedure for objecting. Neither the statute nor the rules say, "oh, by the way, we can also sandbag you by sneaking an objection into a reorganization plan and hoping you do not realize that we can use this device to circumvent the claim objection procedure mandated by the rules." That is not the law, and if it were the law, it would be a material disservice to public confidence in the integrity of the bankruptcy system.

While we do not hold that a plan can never be used to object to a claim of a creditor who does not actually consent to such an objection, by holding that the essence of Rule 3007 must be complied with, we are holding that considerations of due process mandate great caution and require that the creditor receive specific notice (not buried in a disclosure statement or plan provision) of at least the quality of specificity, and be afforded the same opportunity to litigate one-on-one, as would be provided with a straightforward claim objection under Rule 3007. In many chapter 11 cases, the only safe way to proceed will be by way of the separate claim objections that the rules of procedure and the Bankruptcy Code contemplate.

In short, we are presented with a comprehensive chapter 11 scheme in which a claim that is "deemed allowed" can be challenged over the creditor's opposition only by way of a claim objection under § 502(a) and Rule 3007.

## B

When debtor filed its initial schedules at the outset of the case, the Varela claim was "deemed allowed" as a secured claim in the amount of $170,000.

Once debtor decided to attack the claim by asserting that a usury defense was available to reduce the claim, it had two alternatives under the Federal Rules of Bankruptcy Procedure.

First, it could have filed a Rule 3007 objection to the Varela "deemed allowed" claim, which would have trumped the "deemed allowed" status and required further hearings. *See Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell),* 223 F.3d 1035, 1039–40 (9th Cir.2000). If the objection had not been resolved by the time the creditors had to vote to accept or reject the proposed chapter 11 plan, then either debtor or Varela could have asked the court to exercise its Rule 3018(a) authority to allow the claim temporarily for purposes of voting.

The second alternative would have been for debtor to amend its schedules and designate the Varela "deemed allowed" claim as "disputed" so that it would lose its "deemed allowed" status. Debtor would then have had to give notice of the amendment to Varela and Inter Mountain as entities "affected thereby." Fed. R. Bankr.P. 1009(a). Varela would have likely responded by filing a proof of claim. If the claims bar date had passed, the court would have had to exercise its authority under Rule 3003(c)(3) to extend the deadline for "cause." Fed. R. Bankr.P. 3003(c)(3). While a finding of "cause" is ostensibly discretionary, refusal to find "cause" in such circumstances would risk

eviscerating § 1111(a) and creating a major opportunity to lull creditors into complacency by scheduling them with § 1111(a) "deemed allowed" status and then amending schedules after it is too late to file a claim. The proof of claim would then restore Varela's "deemed allowed" status unless debtor were to file a Rule 3007 objection.

Debtor did not pursue either of the alternative courses in this instance.

 In light of this analysis of the "deemed allowed" status of Varela's claim as governed by the schedules, it is simply irrelevant that a protective proof of claim was filed on Varela's behalf during the confirmation process.

Although Rule 3003(c)(4) provides that a creditor's filing of a proof of claim supersedes any scheduling, it does not destroy the effect of scheduling in "deemed allowed" status if the filed proof of claim is somehow procedurally incorrect. Fed. R. Bankr.P. 3003(c)(4). If the superseding claim is defeated on a procedural ground such as timeliness of filing, the "deemed allowed" claim springs back into effect.

Thus, we need not decide whether the Varela filed claim either related back to the time the schedules were filed or is permissible notwithstanding the claims bar date or whether the court was obliged to adjust the claims bar date so as to make the Varela claim timely in light of debtor's stealth attack on the "deemed allowed" status.

The effect of the court's action was to disallow both the Varela filed claim and the Varela "deemed allowed" claim. We conclude that the bankruptcy court erred in disallowing all versions of Varela's claim. Even if sustaining an objection to Varela's filed claim as untimely would pass muster (which we do not decide), that still leaves the Varela "deemed allowed" claim, which had not been challenged under any permissible procedure, in a posture in which it could not be ignored when considering plan confirmation.

## III

Varela argues that the court erred in confirming debtor's plan, because it did not meet the statutory requirements for confirmation.

The court shall confirm a chapter 11 plan only if the plan meets the requirements of § 1129(a). 11 U.S.C. § 1129(a). If a plan meets all of the requirements of § 1129(a) except that of § 1129(a)(8) (which requires that each class of creditors either consent to the plan or be unimpaired under it), the plan can be confirmed only if it meets the "cram down" provisions of § 1129(b).

Varela argues that the court erred in confirming the plan because (1) the plan fails to meet the requirements of § 1129(a)(7), in that it fails to provide that he will receive at least as much as he would have received in a liquidation, and (2) if the requirement of § 1129(a)(7) is met, the plan does not meet the "cram down" requirements of § 1129(b).

### A

 Debtor counters that Varela waived any objections to the plan by not filing a written objection, relying on *Official Creditors' Comm. v. Potter Material Serv., Inc. (In re Potter Material Serv., Inc.)*, 781 F.2d 99 (7th Cir.1986). The law of the Ninth Circuit, which places on the court an independent duty to assure that all requirements for confirmation are satisfied, is to the contrary.

 *Potter Material's* holding, that a court need consider only specific objections raised by creditors to confirmation of a plan and has no "duty to anticipate and

rule upon factual issues which the creditors have not raised," 781 F.2d at 102, is contrary to the law of the Ninth Circuit that the court has an independent duty to make certain that the requirements for confirmation have been met, whether or not a creditor objects. *See Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir.1994).

The fact that Varela merely objected orally and did not file a written objection to confirmation does not preclude him from arguing on appeal that the plan does not comply with the requirements for confirmation set out in § 1129, provided the issues can be resolved without further development of the record. *Id.* at 1214.

### B

Section 1129(a)(7) requires that each member of an impaired class of creditors either accept the plan or receive under the plan not less than what the creditor would have received had the estate been liquidated under chapter 7.

As we have said, the court erred in disallowing Varela's "deemed allowed" claim. Debtor's plan, including presumably the liquidation analysis supporting it, was based on its erroneous reduction of Varela's claim to $95,275. Because the court erred in effectively disallowing Varela's "deemed allowed" claim without the benefit of a claim objection, the court's consideration of the confirmation requirements, based at least in part on Varela's erroneously reduced claim, was fatally flawed. Therefore, we must reverse the confirmation order and remand so the court can reconsider confirmation in light of Varela's "deemed allowed" secured claim in the amount of $170,000.[6]

### C

The court could confirm the plan only if it met the cram down requirements of § 1129(b), because Varela's "deemed allowed" claim is impaired under the plan and he has not accepted it.

Varela argues that the plan does not comply with § 1129(b), which requires that a plan "not discriminate unfairly" and be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

In light of our ruling that the court erred in disallowing Varela's "deemed allowed" claim, it also erred in confirming a plan that called for a reduction of that claim to $95,275.

We may also dispose of two of Varela's arguments that could otherwise arise on remand: that the interest rate provided for in the plan is inadequate to provide the present value of his claim, and that the repayment term is too long in light of the fact that Varela's claim has matured and is due and payable.

Varela has not demonstrated error regarding either the interest rate or the term of repayment. In order for a plan to provide payment for the full value of a claim, it must provide for payment of "interest for the post-confirmation time value of [the creditor's] money." *Perez*, 30 F.3d at 1215. The appropriate interest rate is the rate "the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security." *United States v. Camino Real Landscape Maintenance Contractors, Inc. (In re Camino Real Landscape Maintenance Contractors, Inc.)*, 818 F.2d 1503, 1504 (9th Cir.1987).

---

**6.** While the court erred in disallowing Varela's $170,000 "deemed allowed" claim, it did not necessarily err in disallowing sums in excess of $170,000.

██ Debtor's evidence supports its six percent interest rate. For example, debtor introduced in evidence statistics from the Federal Reserve regarding commercial interest rates. Varela does not challenge that evidence or point to contrary evidence that would call into question the court's reliance on it. Therefore, the approval of a six percent rate was not error.

██ With regard to the repayment term, Varela has pointed to nothing in the record that would demonstrate that the court erred in approving repayment over 240 months. It is the appellant's burden to demonstrate error. *Bergman v. Webb (In re Webb)*, 212 B.R. 320, 322 n. 1 (8th Cir. BAP 1997). In the absence of any reference to evidence that shows error, we cannot say that the court clearly erred in approving the payment term.

At oral argument of this appeal, the parties agreed that, if we were to reverse the confirmation order, on remand the court need only consider the adjustments necessary to provide for payment of Varela's allowed claim. The court need not reconsider every issue relating to confirmation, but only those issues that are directly affected by the reversal of the order disallowing the claim.

## CONCLUSION

The bankruptcy court erred in disallowing Varela's claim. As a result, debtor's fourth amended plan does not meet the requirements of § 1129, and the court erred in confirming it. Accordingly, we REVERSE both the order disallowing the claim and the order confirming the plan, and REMAND for such further proceedings as the court determines are necessary in light of the fact that Varela's claim is deemed allowed in the amount of $170,000.[7]

PERRIS, Bankruptcy Judge, concurring.

I agree with the majority that it may be possible for a debtor to object to a creditor's claim through a proposed plan, if the proper notice is given. *See, e.g., Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1336 (9th Cir.1985) (rejecting attempt to avoid liens through chapter 11 plan); *Dresser Indus. v. Rite Autotronics Corp. (In re Rite Autotronics Corp.)*, 27 B.R. 599, 602 (9th Cir. BAP 1982) ("where a debtor questions the quality of a claim thereby placing the creditor in a position of potential default and loss, due process would call for specific notice to the creditor."). *Cf. Shook v. CBIC (In re Shook)*, 278 B.R. 815, 826 (9th Cir. BAP 2002) (formal objection to claim might not always be necessary; chapter 13 plan may be used to determine amount of claim if creditor receives clear notice that plan will do so).[8]

I write separately to explain why the amended plan in this case did not provide sufficient notice to serve as a substitute for the claim objection process set out in the rules and the Bankruptcy Code.

The only notice Varela had that debtor disagreed with the amount of the Varela "deemed allowed" claim was the provision in one of the later amended plans that stated a dollar figure for the amount of the claim that differed from the amount stated

---

7. We specifically do not address whether Varela can amend his "deemed allowed" claim, or object to that claim, or whether debtor can amend its schedules to reduce the amount of Varela's claim.

8. I realize that chapter 13 differs in some ways from chapter 11, in that there is no chapter 13 analog of § 1111(a) making claims "deemed allowed" without the need to file a proof of claim. However, the reasoning of those cases is instructive.

in debtor's schedules. There was nothing in the plan that pointed out the discrepancy or gave any explanation for it.

Although debtor says that the disclosure statement explained that the principal of the claim was reduced because debtor had determined that a reduction was an appropriate remedy for what it viewed as a usurious interest rate, even such an explanation would not have been a specific notice to this creditor that his claim would be reduced through the plan. As the Ninth Circuit said in another case dealing with confirmation of a chapter 11 plan,

> [i]f [the debtor] intended [the amount of the creditor's claim stated in the plan] as a means of challenging the amount of [the creditor's] claim, he picked a peculiar way of going about it, hardly consistent with his fiduciary obligations to a creditor of the estate. While the debtor may challenge any claim he believes in good faith should not be allowed, *he must do so by raising the issue squarely with the court and giving the affected creditor an opportunity to respond.*

*Perez,* 30 F.3d at 1215 (emphasis supplied; citation omitted). Debtor's amended plan did not do that.

Debtor's attempt to object to the Varela "deemed allowed" claim through a provision in the plan was procedurally inadequate. The unilateral plan provision failed to provide explicit notice to Varela that his claim was being challenged and would be reduced unless Varela took affirmative action. Therefore, I agree with the majority that the bankruptcy court erred in disallowing the Varela "deemed allowed" claim and instead allowing the claim as presented in the chapter 11 plan.

I concur.

