**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SOLIMANO FRAMING GROUP LLC,<br>　　　　　Debtor. | BAP No. NV-24-1102-LFB<br><br>Bk. No. 24-10079-abl |
| SOLIMANO FRAMING GROUP LLC,<br>　　　　　Appellant,<br>v.<br>PIER CONSTRUCTION &<br>DEVELOPMENT, LLC,<br>　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
August Burdette Landis, Chief Bankruptcy Judge, Presiding

APPEARANCES

Matthew C. Zirzow of Larson & Zirzow LLC argued for appellant; Joseph Went of Holland & Hart LLP argued for appellee.

Before: LAFFERTY, FARIS, and BARASH,* Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

---

* Hon. Martin R. Barash, United States Bankruptcy Judge for the Central District of California, sitting by designation.

1

**INTRODUCTION**

After Solimano Framing Group LLC ("Debtor") filed its chapter 11[1] subchapter V petition, it proposed a plan of reorganization through which Debtor sought to assume several contracts, including a number of contracts with Pier Construction & Development, LLC ("Pier"). Debtor referred to these contracts as executory both in the plan and its filed schedules, implying that Debtor had the power to assume them.

Contrary to Debtor's assertions, six of the contracts identified by Debtor had been terminated by Pier prior to the petition date. Unfortunately, given Debtor's misrepresentations concerning the status of the contracts and Debtor's associated nondisclosures, the bankruptcy court remained unaware of this fact and confirmed the plan.

One day after confirmation of Debtor's plan, Pier timely asserted an approximately $500,000 claim against the estate in accordance with the deadline set by the bankruptcy court in the claims bar order. Subsequently, Pier filed an amendment reducing its claim to $0 based on Pier's setoff and recoupment rights. Debtor objected, arguing that the plan, by operation of the doctrine of claim preclusion,[2] precluded Pier's claim. The bankruptcy

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Although the parties use the term "res judicata" in their briefs, the preferred term is "claim preclusion." *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1078 n.8 (9th Cir. 2007).

court disagreed, holding that Debtor could not assume contracts that were terminated prepetition, concluding that claim preclusion did not apply to the facts of this case, and otherwise allowing Pier's claim as amended.

We AFFIRM. We publish to explain that, even in an expedited proceeding under subchapter V, bedrock principles of due process require adequate, comprehensible, and consistent notice of plan provisions that affect creditors' rights.

## FACTS[3]

Debtor operates a construction business that specializes in metal and wood stud framing, drywall and wall finishings, and painting. Prepetition, Pier, a general contractor, entered into eight subcontracting agreements with Debtor with respect to four different construction projects. Through these subcontract agreements, Debtor agreed to provide drywall and painting services on the specified projects.

In December 2023, Pier terminated six of its eight subcontracts with Debtor for cause (the "Terminated Subcontracts").[4] Pier did not terminate the two remaining subcontracts. Weeks later, on January 9, 2024, Debtor

---

[3] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] As further discussed below, Debtor now contends that the bankruptcy court should have analyzed whether the Terminated Subcontracts were effectively and irrefutably terminated. However, Debtor did not raise this issue before the bankruptcy court, and there are no facts in the record or applicable law in the briefs that would lead this Panel to conclude that the Terminated Subcontracts were anything but terminated.

3

filed its chapter 11 subchapter V petition. Upon Debtor's filing, the court set a deadline of March 19, 2024, for creditors to file proofs of claim.

Although Debtor did not identify Pier as a creditor in either its petition or its schedules, Pier concedes that it had actual notice of Debtor's bankruptcy filing. However, in its schedule G, Debtor listed all of its subcontracts with Pier, including the Terminated Subcontracts, as executory and unexpired contracts, subject to assumption or rejection. Debtor did not disclose anywhere in its schedules or statements that most of its subcontracts with Pier had been terminated prepetition, or even indicate that there was a potential dispute about the status of the contracts, instead representing to the court and its creditors that **all** of its subcontracts with Pier were executory.

Less than one month after the petition date, Debtor filed its chapter 11 subchapter V plan of reorganization (the "Plan"). In the Plan, Debtor did not propose to treat Pier as a separately classified creditor. With respect to executory contracts, the Plan provided:

> The Debtor assumes all executory contracts and unexpired leases as of the Effective Date listed on **Exhibit 4**. All other executory contracts and unexpired leases shall be deemed to be rejected as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease must be filed no later than **30** days after the date of the order confirming this Plan, or it will be forever barred. The Confirmation Order shall constitute an order approving the assumptions and rejections herein pursuant to § 365 of the Code, and as of the Effective Date. The Debtor reserves the

4

right to amend this exhibit to add or subtract executory contracts and unexpired leases through the date of the confirmation hearing on the Plan.

Plan, Article 6 (emphases in the Plan). In Exhibit 4 of the Plan, Debtor listed all of its subcontracts with Pier (among several other contracts), including the Terminated Subcontracts. Debtor also asserted that the amount required to cure any default under its subcontracts with Pier (and the other listed contracts) was $0. As with its schedules and statements, Debtor did not disclose anywhere in the Plan that six of the listed subcontracts Debtor purported to assume had been terminated prepetition.

The Plan also reiterated the court's previously set claims bar date of March 19, 2024, and provided that "Allowed" claims would include claims that had been "timely filed by the Bar Date." Plan, Article 8.01. Aside from specifying that creditors could file claims until the March 19 bar date, the Plan also provided that the bankruptcy court would retain jurisdiction to, among other things, "hear and determine any objections to the allowance of claims." Plan, Article 8.08.

Shortly after Debtor filed the Plan, the bankruptcy court entered an order setting procedures related to confirmation of the Plan (the "Procedures Order"). The Procedures Order required that objections to confirmation be filed no later than March 8, 2024, and set a confirmation hearing on March 18, 2024, i.e., prior to the deadline for creditors to file proofs of claim.

Pier did not object to confirmation of the Plan. On March 18, 2024, the bankruptcy court held the confirmation hearing and issued an oral ruling confirming the Plan.

One day later, Pier timely filed its proof of claim. In its original claim, Pier asserted a $499,429.04 unsecured claim against Debtor based on "contract termination." As far as the Panel can tell from the record, Pier's post-confirmation proof of claim was the first filing before the bankruptcy court that revealed that most of Debtor's subcontracts with Pier had been terminated.[5]

Debtor promptly filed an objection to Pier's claim, arguing that the claim was time-barred under the Procedures Order and that the Plan precluded Pier from asserting a claim because the Plan provided for a cure amount of $0.

Subsequently, Pier filed an amended proof of claim that reduced the amount of its asserted claim to $0. In an attachment to the amended proof of claim, Pier explained that the reduction was based on application of recoupment in the amount of $347,174.06 and setoff in the amount of $152,254.98. On the same day, Pier filed a response to Debtor's objection to its claim, asserting that Debtor did not have the ability to assume the

---

[5] Concurrently, Pier filed a motion for relief from the automatic stay to, among other things, apply recoupment and setoff to mutually owed debts. Debtor and Pier later stipulated for relief from the automatic stay allowing Pier to exercise its setoff and recoupment rights.

Terminated Subcontracts and that, in any event, the Plan did not preclude Pier from employing setoff or recoupment to adjust its claim.

The bankruptcy court held a hearing on Debtor's objection to Pier's claim. Thereafter, the bankruptcy court issued an oral ruling allowing Pier's claim as adjusted. The court held that Debtor did not defeat the prima facie validity of Pier's proof of claim. Specifically, the court was not persuaded that the doctrine of claim preclusion barred Pier from filing a claim when Debtor did not disclose in the Plan that the Terminated Subcontracts had been terminated prepetition. The court also held that Pier's claim was timely because it was filed by the claims bar date, and the Procedures Order did not alter that deadline. Finally, the court held that, even if Debtor defeated the prima facie validity of Pier's claim, Pier ultimately satisfied its burden of persuading the bankruptcy court that it is entitled to a general unsecured claim against which Pier was able to exercise its rights of recoupment and setoff. Debtor timely appealed.[6]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction over the bankruptcy court's determination under 28 U.S.C. § 158.

---

[6] Ordinarily, a debtor would not complain about a creditor's reduction of the creditor's own claim to zero. But Debtor wished to recover the amounts that Pier had owed to Debtor but had set off or recouped against its claims against Debtor, and Debtor believed that the court's order allowing Pier's claim in a zero amount would effectively approve the setoff and recoupment.

**ISSUE**

Did the bankruptcy court err in allowing Pier's claim against the estate?

**STANDARDS OF REVIEW**

A bankruptcy court's order allowing or disallowing a proof of claim is reviewed for abuse of discretion. *Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 707 (9th Cir. 1988); *Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.)*, 195 B.R. 92, 96 (9th Cir. BAP 1996). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011). "We review the bankruptcy court's findings of fact for clear error; we review its conclusions of law de novo." *Adinolfi v. Meyer (In re Adinolfi)*, 543 B.R. 612, 614 (9th Cir. BAP 2016) (internal quotation and citation omitted).

"Whether a person's due process rights have been violated is a mixed question of law and fact, which is reviewed de novo." *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002). Under a de novo review, "we look at the matter anew, giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011) (quoting *Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 389 (9th Cir. BAP 2011)).

We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

The crux of Debtor's argument on appeal is that the confirmed Plan precluded Pier from asserting a claim. This argument depends on the dubious assertions that a chapter 11 debtor-in-possession, which owes fiduciary obligations to the estate, may: (i) falsely identify the Terminated Subcontracts as executory contracts in its sworn schedules; (ii) list the Terminated Subcontracts as executory contracts in the Plan; (iii) propose to "assume" the Terminated Subcontracts and "cure" any default without disclosing that the agreements were terminated prepetition; (iv) fail to notify Pier or the court that Debtor not only intended to assume executory contracts but also, contrary to the Code, revive terminated contracts; (v) request confirmation of the Plan containing these false statements and material omissions, without offering any evidence that the contracts were executory or that the cure amounts were zero; and (vi) subsequently use the Plan as a cudgel against Pier's timely filed proof of claim.[7]

---

[7] It is well established that contracts that were terminated prepetition may not be assumed in bankruptcy. "If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir. 1984). Contracts that are terminated prepetition also are not property of the estate. *Id.* at 1213 ("Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.'") (quoting H.R. Rep. 95-595, at

We fervently disagree. As discussed below, the facts of this case foreclose application of the doctrine of claim preclusion for several reasons, including that such application would run afoul of Pier's due process rights. We discern no error in the bankruptcy court's decision to allow Pier's claim notwithstanding Debtor's assertion that certain ambiguous language in the Plan precluded the claim.

## A. Application of claim preclusion in this case would violate Pier's due process rights.

An order confirming a bankruptcy plan is "binding on all parties and all questions that could have been raised pertaining to the plan are entitled

---

367 (1977)).

On appeal, Debtor argues that the bankruptcy court should have analyzed whether the Terminated Subcontracts were "irrefutably" terminated. However, a party "who fails to timely raise an issue in the bankruptcy court cannot raise it on appeal." *Res. Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, L.L.C.)*, 485 B.R. 393, 411 (9th Cir. BAP 2012).

In its briefing and oral argument before the bankruptcy court, Debtor never asserted that the Terminated Subcontracts were not validly terminated, or that they were executory, or that there was any legal basis to revive the Terminated Subcontracts. Accordingly, after reviewing the record before it, which included Pier's prepetition notices of termination, the bankruptcy court explicitly found that the Terminated Subcontracts had been terminated weeks before Debtor filed its petition. As a result, Debtor may not raise this issue for the first time on appeal.

Even if the Panel were to consider Debtor's arguments regarding the validity of the terminations, both the record and Debtor's briefs are devoid of any reason to hold that the bankruptcy court's finding regarding the prepetition terminations was clear error. Debtor only states in its briefs that, occasionally, terminated contracts may be revived based on state law, such as where the contracts contain anti-forfeiture provisions or when a termination is interpreted as an anticipatory repudiation. However, Debtor does not provide any application of this law to the facts of this case. Consequently, there is no reason for this Panel to question the bankruptcy court's finding that the Terminated Subcontracts were completely terminated prepetition.

to *res judicata* effect." *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1995). Generally, "'[i]f a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order,' the creditor is foreclosed from challenging any of the plan's provisions, 'even if such a provision is inconsistent with the Code.'" *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) (quoting *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999)).

Nevertheless, "[t]his general proposition is subject to some major limitations." *Cnty. of Ventura Tax Collector v. Brawders (In re Brawders)*, 325 B.R. 405, 411 (9th Cir. BAP 2005), *aff'd*, 503 F.3d 856 (9th Cir. 2007). One such limitation is the due process rights of parties impacted by a plan of reorganization. *See id.* Courts do not apply the doctrine of claim preclusion where application of the doctrine would violate a party's due process rights. *Id.*

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). "The notice must be of such nature as reasonably to convey the required information. . . ." *Id.* (citations omitted).

Very recently, the Ninth Circuit stressed that chapter 11 debtors-in-possession must be clear and explicit in matters that impact creditors' rights. *Munding v. Masingale (In re Masingale)*, 108 F.4th 1195 (9th Cir. 2024).

11

In *Masingale*, the debtors filed schedules indicating that they were exempting 100% of the fair market value of their real property. *Id.* at 1198. Under the Code, unless a party in interest timely objects to a debtor's claimed exemption, the property claimed as exempt becomes exempt. *Id.* at 1197 (citing § 522(*l*)). A party in interest did not timely object to the debtors' claimed exemption. *Id.* at 1198.

However, before the deadline to object expired, the debtors filed a chapter 11 plan and disclosure statement and made several representations in both documents that they would only retain the exemptions allowed by law and not exceeding any statutory cap. *Id.* at 1198-99. The bankruptcy court eventually confirmed the debtors' plan. *Id.* at 1199.

Subsequently, the debtors' case was converted to a chapter 7 liquidation. *Id.* When the chapter 7 trustee sought to sell the debtors' real property, the debtors objected on the basis that they had claimed 100% of the fair market value of the property as exempt. *Id.* at 1199-1200. The bankruptcy court disagreed with the debtor, allowing an exemption only in the amount of the statutory maximum. *Id.* This Panel reversed the bankruptcy court, holding that two Supreme Court decisions indicated that a debtor's scheduled exemptions were dispositive once the deadline to object expired without any objection to the exemption, even if the claimed exemption improperly exceeded the statutory cap. *Id.* (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992); *Schwab v. Reilly*, 560 U.S. 770 (2010)).

12

The Ninth Circuit disagreed. *Id.* at 1208. Although the Ninth Circuit acknowledged that uncontested exemptions generally are dispositive, the Circuit held that *Taylor* and *Schwab* did not apply where the debtors made conflicting representations in their schedules, on the one hand, and the plan and disclosure statement, on the other hand. *Id.* at 1205. The conflicting representations did not establish the "type of 'clear' above-limit exemption or 'warning flag[]' that required a make-it-or-lose-it objection . . . ." *Id.* (quoting *Schwab*, 560 U.S. at 789).

In reaching this conclusion, the Ninth Circuit placed great weight on the fact that the debtors "were serving as debtors-in-possession and owed attendant fiduciary obligations to their creditors." *Id.* In such cases, "precedent does not suggest that we should endorse what happened here" by allowing debtors to make unclear, contradictory statements "and then capitalizing on the lack of any objection." *Id.* at 1207; *see also J.J. Re-Bar Corp. v. United States (In re J.J. Re-Bar Corp.)*, 420 B.R. 496, 506 (9th Cir. BAP 2009) (plan did not provide adequate notice to creditor where language in plan was "too 'cute'" and "too cryptic" and any "lack of clarity appropriately" fell on the debtor that drafted the plan), *aff'd*, 644 F.3d 952 (9th Cir. 2011).

Prior to *Masingale*, the Ninth Circuit also had repeatedly stressed that, for claim preclusion to apply to a confirmed plan, the language in the plan impacting a party's rights must be clear and unambiguous. *See Miller*, 363 F.3d at 1006 (language in chapter 11 plan that provided for discharge of nondischargeable debts was "insufficiently clear to warrant overriding the

13

interpretive rule that statutory rights can be waived only by an explicit statement"); *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004) (holding that a "confirmed plan has no preclusive effect on issues that . . . were not sufficiently evidenced in a plan to provide adequate notice to the creditor" and that a contrary holding would allow stripping of rights "by ambush"); *Brady v. Andrew (In re Com. W. Fin. Corp.)*, 761 F.2d 1329, 1337 (9th Cir. 1985) (notice inadequate where disclosure statement included substantive arguments regarding ability to avoid investors' interests, but statement did not clearly warn investors that by voting for the plan they would relinquish their security interests).

In line with these authorities, this Panel also has confirmed that notice is inadequate, and thus claim preclusion does not apply, where a plan is not clear enough to inform an impacted party that its rights are being impacted. *In re Brawders*, 325 B.R. at 413; *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489 (9th Cir. BAP 2003). As aptly explained in *Brawders*:

> [A] plan should clearly state its intended effect on a given issue. Where it fails to do so it may have no res judicata effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the parties' expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme.

14

*In re Brawders*, 325 B.R. at 411.

For instance, in *Dynamic Brokers*, the chapter 11 debtor-in-possession scheduled a creditor's claim without qualification, such that it was deemed allowed and creditor did not need to file its own claim. *In re Dynamic Brokers, Inc.*, 293 B.R. at 492. After the claims bar date, the debtor proposed a plan that dramatically reduced the amount of the creditor's claim. *Id.*

The bankruptcy court confirmed the plan over the creditor's oral objection, noting that the creditor had failed to timely submit a written objection to the plan. *Id.* at 493. Separately, the court also sustained debtor's objection to the creditor's filed claim. *Id.* On appeal, this Panel reversed both the order confirming the plan and the order sustaining debtor's objection to the creditor's claim. *Id.* at 492.

In concluding that the debtor failed to provide adequate notice to the creditor, the Panel first noted that "there is no rule that authorizes an objection to claim to be litigated in chapter 11 confirmation proceedings without complying with Rule 3007."[8] *Id.* at 496. The Panel was careful to note that it was "not hold[ing] that a plan can never be used to object to a claim of a creditor who does not actually consent to such an objection . . . ." *Id.* at 497. However, any objection through a chapter 11 plan would have to comply with "the essence of Rule 3007" to ensure protection of creditors' due process rights. *Id.*

---

[8] Rule 3007 sets forth the procedural requirements for objecting to a claim.

> [U]tilizing a plan confirmation proceeding as a method of objecting to a claim presents troubling policy issues in the face of rules of procedure that appear to require formal objections to claims. The construct of the statute and rules that is held out to the public is that claims are deemed allowed unless there is an objection in accordance with rules that prescribe a precise procedure for objecting. Neither the statute nor the rules say, "oh, by the way, we can also sandbag you by sneaking an objection into a reorganization plan and hoping you do not realize that we can use this device to circumvent the claim objection procedure mandated by the rules." That is not the law, and if it were the law, it would be a material disservice to public confidence in the integrity of the bankruptcy system.

*Id.*

In light of the above, the Panel held "that considerations of due process mandate great caution and require that the creditor receive specific notice (not buried in a disclosure statement or plan provision) of at least the quality of specificity, and be afforded the same opportunity to litigate one-on-one, as would be provided with a straightforward claim objection under Rule 3007." *Id.*; *see also Century Indem. Co. v. Nat'l Gypsum Co. Settlement Tr. (In re Nat'l Gypsum Co.)*, 208 F.3d 498 (5th Cir. 2000) (aggregating cases and requiring strict adherence to § 365 and Rules 6006 and 9014 when debtors assume executory contracts via a plan).

The basic gist of the authorities above can be distilled to the following: a confirmed plan will not preclude parties from subsequently asserting their rights unless specific language in the plan **clearly** and **unambiguously** disposed of those rights.

16

Here, Debtor asserts that including the Terminated Subcontracts in an exhibit to the Plan that listed a total of 42 purportedly executory contracts qualified as adequate notice to Pier. Pursuant to the ample authorities above, we disagree. Debtor's mere inclusion of the Terminated Subcontracts in an exhibit to the Plan, without further explanation or disclosure, was insufficient to provide adequate notice to Pier about the impact of the Plan on Pier's rights.

Significant to this conclusion is that the Plan did not simply propose assumption of a contract and cure of a default. Because the Terminated Subcontracts were terminated before the petition date, what the Plan actually proposed was resuscitation of terminated agreements and, as a result, the creation of an interest the estate did not have and the imposition of obligations on a third party that no longer existed.[9] Given the extraordinary alteration of Pier's rights sought by the Plan, the boilerplate language regarding assumption of executory contracts and a reference to an exhibit identifying the Terminated Subcontracts, without any disclosures regarding the prepetition terminations or any discussion regarding Debtor's ability to unilaterally revive such agreements, was woefully inadequate.[10]

---

[9] We take no position on whether the Plan, Procedures Order, and other notices served by Debtor would have been adequate if there was no dispute that the subject contracts were executory.

[10] We acknowledge that, in subchapter V cases, debtors are not required to file disclosure statements in connection with a plan of reorganization. § 1181(b). However,

Contrary to the Ninth Circuit's demand for clarity, the Plan was far from clear and unambiguous regarding its impact on Pier's rights. As to this point, the Ninth Circuit's decision in *Masingale* is instructive. Without explicit, clear disclosure by Debtor that it intended to revive the Terminated Subcontracts, Pier could have interpreted the Plan as only allowing assumption of the subcontracts Debtor had the ability to assume, i.e., the two subcontracts Pier did not terminate. A party in Pier's shoes would have no reason to believe that its claim based on the Terminated Subcontracts would be governed by the clause related to executory contracts instead of the clauses related to the treatment and allowance of claims. Debtor, a chapter 11 debtor-in-possession with "attendant fiduciary obligations" like the debtors in *Masingale*, cannot obfuscate the effect of the

---

nothing in the statutory scheme governing subchapter V cases allows for the inclusion of false statements and material omissions in the debtor's schedules and statements, or permits proposal of plans that run afoul of other provisions of the Code. Subchapter V debtors, like other chapter 11 debtors, are still required to propose a plan "in good faith and not by any means forbidden by law," and to ensure that the plan "complies with the applicable provisions of" the Code. § 1129(a)(1), (a)(3).

In addition, the shortened deadlines in subchapter V cases often lead to expedited procedures and dispositions. This is evident in this case, where Debtor filed its petition, proposed a plan, and had that plan confirmed in the span of approximately two months. In such cases, it is extra important to be mindful of preserving parties' due process rights.

Finally, we note that the streamlined procedures of subchapter V do not supplant the basic principle that the proponent of a plan has the burden of proving that the court should confirm the plan and grant the other requested relief. *In re Zaleha*, 162 B.R. 309, 313 (Bankr. D. Idaho 1993). Debtor offered no evidence that any of the plan confirmation requirements were met, that any of the assumed contracts were in fact executory, or that the cure amount under any of those contracts was zero.

Plan and then "capitaliz[e] on the lack of any objection." *Masingale*, 108 F.4th at 1205, 1207.

Equally without merit is Debtor's suggestion that the Procedures Order somehow barred Pier from filing a proof of claim after the deadline to object to confirmation, as opposed to the applicable claims bar date. The Procedures Order simply provided a deadline by which objections to confirmation of the Plan must be filed. Although the Procedures Order did explicitly state that the deadline applied to "objections to the assumption or rejection of any executory contracts or unexpired leases and/or alleged cure claims relating to the same," neither the Procedures Order nor any other notice provided by Debtor explicitly categorized the Terminated Subcontracts as executory contracts or otherwise disclosed Debtor's intention to revive the Terminated Subcontracts.

Consequently, nothing in the Procedures Order served to adequately signal to Pier that the applicable deadline to protect its rights – which from Pier's perspective required only the filing of a proof of claim – was the deadline related to executory contracts as opposed to the deadline to file a claim, which Pier timely did. Once again, *Masingale* forecloses reliance on this type of contradictory messaging.

In addition, under *Dynamic Brokers* and *National Gypsum*, Pier was entitled to the same procedural safeguards it would have received had Debtor filed a motion to assume the Terminated Subcontracts under § 365. Had Debtor filed a motion, Debtor would have had to comply with Rule

6006, including the Rule's requirements that all executory contracts to be assumed under the same pleading be between the same parties and that Debtor specify the terms for each requested assumption. Rule 6006(e), (f). Debtor's lumping of 42 agreements with several nondebtor parties in one exhibit that lacked disclosure of pertinent terms related to each agreement would not have satisfied this procedure. Instead of taking "great caution" to ensure that Pier received "specific notice" of the Plan's impact on Pier's rights, Debtor "buried" relevant information in an exhibit to the Plan and, more importantly, entirely failed to disclose pertinent information at all. *In re Dynamic Brokers*, 293 B.R. at 497. This is precisely the type of "sandbagging" the Panel cautioned against in *Dynamic Brokers*. *Id.*

For all the foregoing reasons, application of claim preclusion in this case would violate Pier's due process rights and, as a result, the bankruptcy court correctly refused application of the doctrine.

**B.    Even if Debtor did not violate Pier's due process rights, the Plan would not preclude Pier from filing a claim.**

Claim preclusion prohibits relitigation of "any claims that were raised or could have been raised" in a prior action between the same parties or their privies. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Application of the doctrine requires: (1) an identity of claims; (2) a final judgment on the merits; and (3) the same parties or privity between parties. *Id.*

20

Here, the first two elements of the doctrine give us pause. First, it can hardly be said that the Plan's proposed cure amount, **for the purpose of assuming an executory agreement and continuing a contractual relationship**, is identical to a determination regarding the validity and amount of a creditor's unsecured claim based on a prepetition termination.[11] While cure amounts set in a confirmed plan may preclude allowance of a creditor's claim in certain situations, here, the concept of a "cure" is entirely irrelevant to the claim asserted by Pier. Given Pier's prepetition termination, there was nothing to "assume" and nothing to "cure," rendering any analysis of the amount necessary to assume an executory contract under § 365 immaterial to the court's analysis of the allowance and validity of Pier's claim.

Second, the only portion of the Plan that relates to the current dispute between the parties is the portion that reserved the bankruptcy court's jurisdiction to adjudicate claims allowance post-confirmation. "It is well established that 'res judicata does not apply when a cause of action has been expressly reserved for later adjudication.'" *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 119 (Bankr. N.D. Ill. 2004) (quoting *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 259-60 (7th Cir. 1997)). Plans routinely reserve claims allowance litigation as a post-confirmation matter; otherwise, debtors would "have to adjudicate every

---

[11] Of course, the great irony in this case is that both Debtor's proposed cure amount and Pier's net asserted claim are for the same amount – zero dollars.

21

claim to finality prior to plan confirmation" and significantly delay plan confirmation. *Id.* at 119-20 (citing *Amarex, Inc. v. Marathon Oil Co. (In re Amarex, Inc.)*, 74 B.R. 378, 380 (Bankr. W.D. Okla. 1987), *aff'd*, 88 B.R. 362 (W.D. Okla. 1988)). This reservation is especially important in subchapter V cases, like this one, because subchapter V "by its very nature is intended to be an expedited process." *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 340 (Bankr. S.D. Fla. 2020).

Here, the court explicitly refrained from finally adjudicating the allowance of claims via the Plan, such that the confirmation order would not qualify as a final judgment on the merits of Pier's claim. Pursuant to the claims allowance procedures set forth in the Plan and the previously set claims bar date, Pier properly and timely filed its proof of claim on the claims bar date. The bankruptcy court appropriately adjudicated the allowance of Pier's claim without regard to the inapplicable "cure" amounts in the exhibit to the Plan. We detect no error in the bankruptcy court's decision not to apply the doctrine of claim preclusion.

## C.     Law of the case.

"Under the law of the case doctrine, a court is barred from reconsidering an issue that already has been decided in the same court or in a higher court in the same case." *FDIC v. Kipperman (In re Com. Money Ctr., Inc.)*, 392 B.R. 814, 832 (9th Cir. BAP 2008) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). "For the law of

22

the case doctrine to apply, the issue must have been decided, either expressly or by necessary implication." *Id.*

"However, even if the law of the case doctrine applies, a court may decide, in its discretion, to revisit the issue if: '(1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand [is] substantially different.'" *Id.* at 832-33 (quoting *Milgard Tempering, Inc.*, 902 F.2d at 715).

Debtor did not raise its law of the case argument before the bankruptcy court. Consequently, Debtor is barred from raising this issue on appeal. *See In re Wash. Coast I, L.L.C.*, 485 B.R. at 411.

Nevertheless, for the very same reasons discussed above, the issues related to allowance of Pier's claim were not decided, either expressly or by necessary implication, in connection with plan confirmation. In addition, the law of the case doctrine provides courts the flexibility to decline use of the doctrine where a manifest injustice would occur. Given the serious due process implications discussed above that foreclose application of claim preclusion, Debtor similarly cannot rely on the law of the case doctrine.

**D. Debtor has not set forth any other error in the bankruptcy court's ruling allowing Pier's claim.**

As Debtor acknowledges in its brief, the Ninth Circuit Court of Appeals has explicitly held that creditors' right to setoff under § 553 takes precedence over § 1141 and, as a result, confirmation of a plan does not

23

impact a creditor's right to setoff. *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Ent. Grp. Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992). Nevertheless, in its brief, Debtor contends that appellee's setoff and recoupment claims did not survive plan confirmation.

Debtor's theory is again dependent on a holding that the Plan's purported "assumption" and "cure" preclude Pier from asserting setoff and recoupment. For the same reasons discussed above, the Plan's language regarding executory contracts is no more preclusive to Pier's recoupment and setoff theories as it is to Pier's assertion of a claim.

Debtor's references to certain out-of-circuit authorities also are inapposite. *United States v. Cont'l Airlines (In re Cont'l Airlines)*, 134 F.3d 536 (3d Cir. 1998); *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2003 WL 21355214, at *4-5 (S.D.N.Y. June 11, 2003). In *Continental Airlines*, the Third Circuit distinguished *De Laurentiis* by noting that the creditor in *De Laurentiis* timely filed a proof of claim whereas the creditor in *Continental Airlines* did not. *Cont'l Airlines*, 134 F.3d at 541. Here, as discussed above, Pier timely filed a proof of claim, and the Plan contemplated that claims allowance and adjustment would occur after confirmation.

We are equally unpersuaded by *Daewoo*. There, the chapter 11 plan contained a specific prohibition against assertion of setoff claims against the debtor or the trust established by the plan. *Daewoo Int'l (Am.) Corp.*

*Creditor Tr.*, 2003 WL 21355214, at *4. Here, the Plan does not contain any such specific prohibition.

Debtor has not provided a legitimate reason to stray from the holding in *De Laurentiis*. In addition, Debtor does not articulate any other reason why the bankruptcy court erred in allowing Pier's claim as reduced based on Pier's setoff and recoupment calculations.

## CONCLUSION

The bankruptcy court did not err in allowing Pier's claim. We therefore AFFIRM.